In conference, chancellor Wythe, thought that the case was completely within the rule of contribution, as the vessel was destroyed to save the cargo; and, therefore, that it stood upon the same principle, as when goods are thrown overboard in stress of weather; or in danger, or just fear of enemies, in order to save the ship and the rest of the cargo: in which case, it is universally admitted, that that *which is saved, including the ship, shall contribute to repair that which is lost. So, in this case, where the ship was stranded in order to save the cargo, and had that effect, it was equally just, that the cargo should contribute to repair the loss of the ship.
But chancellor Blair thought otherwise; for the ship was run on shore, in order to save the property of the owner; and not to preserve the cargo of the freighters, which is always the avowed and single object, in the case of jettison. That all chance of escape was taken from the proprietors of the goods, with a view mainly to benefit the owner of the vessel; which might, in the estimation of the master and crew, by the intervention of shallow waters, or other impediments to the heavier vessels of the enemy, have, possibly, eluded the danger. And although the goods, belonging to the freighters, were ultimately saved, yet that was the consequence, and not the principal intent, at the time of running the ship on shore. Nor had any case been produced to shew, that the owner of the ship could, under such circumstances, claim contribution. And, although there was no proof of any actual fraud in the conduct of the master and crew, nor reason to suspect it, yet the court should be guided by safe principles, and not lay down a rule which would, hereafter, be liable to abuse.
The judges, however, came to no resolution at the time; but the cause was held under advisement until several terms after-wards; when another argument was directed ; but never took place before the court as then constituted; for, in consequence of the new system, the court of appeals was reduced to five judges only; and, in June 1790, the cause was reheard before Pendleton, president, Carrington, Fleming and Mercer, judges; who made the following decree:
“The court having maturely considered the transcript of the record, the exhibits produced and read, and the arguments of the counsel on both sides, are of opinion, That the defendant ought to be accountable for the merchandize *'saved from the wreck of the brigantine De-spatch, according to the sales thereof, and with each proprietor in proportion to the amount of his interest in the cargo; and that each such proprietor ought to be charged with full freight for the goods saved, and a reasonable salvage; but be exempt from average contribution for any loss or damage to the vessel or her rigging, or for goods lost or damaged; the proprietors of which vessel and goods must abide their respective fates, and take what is saved from the wreck. ’ ’
Memorandum. — 'What passed at the conference, was related to the reporter by chancellors Wythe and Blair.